

**ENTERED**
**11/25/2008**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| JANET F. HEARD; aka J. L. FLIPPIN § | CASE NO: 07-31020 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| WASHINGTON MUTUAL BANK, § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 07-03444 | |
| § | | |
| JANET F. HEARD § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

### Summary

Section 727 of the Bankruptcy Code grants an individual debtor a bankruptcy discharge. Section 727 further provides that an individual will not receive a discharge if the individual engaged in certain inequitable conduct, including making transfers and false statements with fraudulent intent. Plaintiff Washington Mutual Bank ("Washington Mutual") alleges that defendant debtor Janet F. Heard ("Ms. Heard") made such transfers and false statements. Based on the evidence presented, the Court finds that Ms. Heard directly, or indirectly through her attorney, failed to disclose assets with indifference to the truth. Accordingly, the Court denies Ms. Heard a discharge under § 727(a)(4)(A).

### Background

Upon her marriage to Jack Heard ("Mr. Heard"), Ms. Heard left the workforce to raise her children and otherwise care for the domestic household. Until the Heards' recent financial issues, Mr. Heard was responsible for providing the family income. Mr. Heard was also

1

responsible for managing the family income. According to the Heards, Ms. Heard had an extreme aversion to all things financial.

The Heards allege that Ms. Heard had no desire to know the source of the family's income or the nature of the family's expenses. Indeed, if the Court were to believe the testimony, Ms. Heard knows nothing about her family's income, assets, and expenses. During the past eight years, the Heards would see two businesses fail, multiple lawsuits, the shifting of stock between companies and trusts, the sale of the Heards' homestead to Mr. Heard's attorney, and Ms. Heard's personal bankruptcy filing. A financial storm was tearing apart the family's financial security. Yet Ms. Heard would have the Court believe that she never asked what was bringing the storm or when it would stop. Nor did she ever bother to look out the window to see for herself.

Mr. Heard has owned or managed a series of businesses specializing in contracting out security guards, including Superior Protection, Inc. ("SPI"). In December of 2001, Washington Mutual loaned SPI $2,500,000. Mr. Heard and Ms. Heard personally guaranteed the loan. Ms. Heard admits that she signed the personal guarantee, but contends that she did so without inquiring about the nature of the document. Ms. Heard contends that Mr. Heard or his attorney simply gave her the document and told her where to sign.

After a series of defaults, Washington Mutual brought a state court action against SPI and the Heards. On October 12, 2004, the Heards executed an Agreed Final Judgment in favor of Washington Mutual and in the amount of $2,543,851.07. The Heards pledged all of SPI's common stock to secure the judgment. Ms. Heard was a party to the judgment. However, Ms. Heard allegedly has no recollection or understanding of the judgment or amounts left owing on the judgment.

### *The Transfers*

Months after the Washington Mutual agreed judgment, the Heards swapped Washington Mutual's collateral for stock in a different company and transferred a portion of this new stock into trusts. In November of 2004, the Heards sold their SPI stock to Safeguard Security Holdings, Inc. ("SSHI") for 5,000,000 shares of SSHI stock. SSHI later alleged that SPI failed to disclose significant outstanding liabilities prior to the sale. In June of 2006, SPI, Mr. Heard, and the Flippin Family Trust executed a settlement agreement. Under the settlement, Mr. Heard and the Flippin Family Trust agreed to re-purchase the SPI stock by returning all but 350,000 shares of the SSHI stock. Ms. Heard signed the SSHI settlement agreement as trustor of the Flippin Family Trust. Again, Ms. Heard professes to have no knowledge of the agreement she signed. Although the Flippin[1] Family Trust bears Ms. Heard's maiden name, Ms. Heard claims an absence of knowledge of the Trust, its purpose, its holdings, and its transfers.

The remaining 350,000 shares were transferred to a second trust. In June of 2006, Ms. Heard executed a trust agreement creating a second Flippin Family Trust. The trust agreement named Ms. Heard as the grantor, Ben Stevens as the trustee, and the Heards' children as the beneficiaries. Ms. Heard professes to have no knowledge of the document she signed.

In July of 2006, Mr. Stevens sold approximately 88,000 SSHI shares. The proceeds from the sale were used to purchase the stock of Consumer Security, Inc., which ultimately failed. Washington Mutual alleges that they had no knowledge of and did not consent to the sale of SPI to SSHI or subsequent stock transfers.

---

[1] At times, Ms. Heard's maiden name was spelled "Flippin" and at other times "Flippen", but there is no dispute that the Flippin Trusts are named after Ms. Heard's original last name.

3

*The Bankruptcy*

On February 6, 2007, Ms. Heard filed a chapter 13 bankruptcy petition. On March 5, 2007, Ms. Heard filed her schedules and other documentation required by § 521. Paragraph 7 of her Statement of Financial Affairs asked Ms. Heard to list all gifts made within the year prior to her bankruptcy filing. Paragraph 10 required Ms. Heard to disclose any non-ordinary course transfers made within the two years prior to her bankruptcy filing. Schedule B required Ms. Heard to list personal property, including interests in trusts. Ms. Heard did not disclose the existence of or transfers to or from either of the two Flippin Family Trusts in response to any of the questions.

Schedule I requires the debtor to disclose all sources of income, including income of the debtor's spouse. Ms. Heard stated that her husband earned no income. On June 20, 2007, Ms. Heard testified at a creditor's meeting that her husband was currently receiving no income.

Richard L. Fuqua, II ("Mr. Fuqua") was Ms. Heard's bankruptcy attorney when her schedules were filed. Mr. Fuqua was a personal friend of the Heards. He had represented the Heards in prior legal matters. Mr. Fuqua also has a substantial business relationship with Mr. Heard. Mr. Fuqua formed a company that purchased the Heards' home. The company now leases the home to the Heards. Ms. Heard claims that she has no knowledge that the family home was sold to Mr. Fuqua. The family home was claimed as exempt by Ms. Heard in her bankruptcy schedules. Her exemptions were allowed. The transfer of the home was not illegal and was not prohibited by any provision of the Bankruptcy Code. Nevertheless, Ms. Heard's professed ignorance of the disposition of her own home breaks the last straw of credibility that she might have had. The Court listened to extensive testimony by Ms. Heard. She is an intelligent woman. The Court does not believe that she does not know that her home was sold.

Mr. Fuqua formed EZ Vending, Inc. ("EZ Vending") soon after Ms. Heard filed her bankruptcy petition. EZ Vending employs Mr. Heard. The Court disqualified Mr. Fuqua from representing Ms. Heard because of his ties to Mr. Heard.[2] Mr. Fuqua was not a stranger to Mr. or Ms. Heard when he was retained as Ms. Heard's bankruptcy counsel. Mr. Fuqua was not a stranger to the Heards' finances when he filed Ms. Heard's bankruptcy schedules.

### *The Adversary*

On September 28, 2007, Washington Mutual filed an adversary proceeding against Ms. Heard. Washington Mutual contends that Ms. Heard should be denied a chapter 7 discharge under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), and (a)(4)(A). Generally, Washington Mutual alleges that Ms. Heard transferred the SPI stock and failed to disclose the existence of and transfers to and from the Flippin Family Trusts with the intent to defraud creditors.[3]

On October 9 and 10, 2008, the Court held an evidentiary hearing. For the reasons set forth below, the Court holds that Ms. Heard's debts are non-dischargeable under 11 U.S.C. § 727(a)(4)(A).

---

[2] On June 25, 2008, the Court disqualified Mr. Fuqua from representing Ms. Heard. The Court found that Mr. Fuqua was essentially representing Mr. Heard, not Ms. Heard, and that his duties to Mr. Heard created a prejudicial conflict that Ms. Heard did not waive with the required informed consent. Order Disqualifying Defendant's Attorney, docket no. 30, adv. no. 07-03444 (Bankr. S.D. Tex June 25, 2008).

[3] Washington Mutual asserted a § 727(a)(2)(B) claim based on the sale of the Heards' home. During the October 9-10 trial, the Court struck all evidence related to the homestead. Section 727(a)(2)(B) only applies to property of the estate. The Heards' home was not estate property. Ms. Heard claimed the disputed home as an exempt homestead in her bankruptcy schedules. No party timely objected to Ms. Heard's homestead claim. Exemption objections must be made within 30 days of the conclusion of the § 341 Creditors' Meeting. 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003(b); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643, 112 S.Ct. 1644 (1992); *In re Reed*, 184 B.R. 733, 736 (Bankr. W.D. Tex. 1995). Section 522(l) allows the exemption if a timely objection is not made. *Taylor*, 503 U.S. at 643. Ms. Heard's § 341 Creditors' Meeting was concluded on March 26, 2007. No objections to the homestead exemption were made during the 30 days following March 26. Accordingly, when the home was transferred on August 7, 2007, the home was exempt property rather than property of the estate subject to a § 727(a)(2)(B) claim. After the March 26 § 341 meeting, Ms. Heard's case was converted to a chapter 7 case. The § 341 meeting for the chapter 7 case was not conclude until July 9, 2007. However, conversion from chapter 13 to chapter 7 does not restart the 30-day deadline for objections to exemptions. *In re Fonke*, 321 B.R. 199 (Bankr. S.D. Tex. 2005); *In re Shults*, 2007 WL 2034296 (Bankr. N.D. Tex. July 11, 2007).

## Jurisdiction

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. § 1409.

## Law

Section 727(a)(4)(A) precludes a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The objecting party bears the burden of proving a § 727(a)(4)(A) claim by a preponderance of the evidence. *In Rajabali*, 365 B.R. at 714 (citing, *Sholdra v. Chilmark Fin. (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001); *Gorgan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). The objecting party must prove that: "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *In re Sholdra*, 249 F.3d at 382 (citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)). The Court considers the five elements separately below.

### 1. Statement Under Oath

Washington Mutual alleges that Ms. Heard knowingly, and with the intent to evade creditors' claims, failed to disclose material information within her schedules, statement of financial affairs, documents produced in response to a Rule 2004 subpoena, and testimony in deposition and before a creditors' meeting. Section 727(a)(4)(A) encompasses statements and omissions within bankruptcy schedules and § 341 creditors' meetings. *In re Rajabali*, 365 B.R. 702, 714 (citing *In re Beaubouef*, 966 F.2d at 178).

### *2. False Statement*

Washington Mutual alleges that Ms. Heard failed to disclose the existence of and transfers to the Flippin Family Trust and Mr. Heard's employment with EZ Vending. Ms. Heard does not dispute that she failed to disclose this information.

### *3. Knowledge*

Ms. Heard has personally signed numerous documents related to the Flippin Family Trust. Ms. Heard signed the 2001 personal guarantee for Washington Mutual's $2,500,000 loan. Ms. Heard signed the 2004 Washington Mutual settlement agreement. Ms. Heard, on behalf of the Flippin Family Trust, signed the 2006 SSHI settlement agreement. Ms. Heard signed the 2006 trust agreement that created the second Flippin Family Trust. Presumably, Ms. Heard signed a trust agreement creating the first Flippin Family Trust. Parties are presumed to know the contents of the contracts they sign. *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1963); *Williams v. Adams*, 696 S.W.2d 156, 159 (Tex. App.—Houston [14th Dist.], 1985, writ ref'd n.r.e.) ("A person who signs a contract is presumed to know its contents . . .").

Ms. Heard's primary defense has been that she was a housewife that left all financial matters to her husband. Ms. Heard contends that not only did she leave all financial matters to her husband, but she refused to even entertain a discussion of her family's financial matters. Ms. Heard testified that she did not know why she personally filed a bankruptcy petition. Ms. Heard testified that she filed simply because her husband told her to file. Ms. Heard testified that she did not know how many judgments were entered against her or how many payments had been made on any judgments. Ms. Heard testified that she did not know who owned her home. Ms. Heard testified that she had no knowledge of the existence of or transfers to the Flippin Family Trusts or the nature of her husband's employment. Mr. Heard testified that he never discussed

7

the trusts or his employment with his wife. Mr. Stevens testified that he only discussed the trusts with Mr. Heard. Mr. Stevens testified that Ms. Heard refused to have anything to do with the Heards' financial affairs. Ms. Heard admitted that she signed the settlement and trust agreements, but she contends that she simply signed what was put before her without reading or inquiring into the nature of what she signed.

The Court finds Ms. Heard's consistent denials of all knowledge of all things financial incredulous. The Heards have faced serious financial issues. Mr. Heard's SPI and Consumer Security, Inc. businesses failed. The Heards have been sued twice and entered two settlement agreements relating to SPI. Their multi-million dollar home has been threatened with foreclosure. Ms. Heard filed a bankruptcy petition and is a defendant in a lawsuit that seeks to preclude discharge of a debt exceeding $1,000,000. Yet, if Ms. Heards' testimony is to be believed, Mr. and Ms. Heard never discussed how they would retain their home. Mr. and Ms. Heard never discussed how they would pay for ordinary living expenses. Mr. and Ms. Heard never discussed trusts established to benefit their children. Mr. and Ms. Heard never discussed why Ms. Heard needed to file bankruptcy. Nor did Mr. Stevens or Mr. Fuqua, Ms. Heard's past attorneys, ever discuss these matters with their client. Ms. Heard's alleged ignorance goes beyond a single transaction or a single account. The breadth of Ms. Heard's alleged ignorance severely diminishes her credibility. Accordingly, Ms. Heard's testimony is insufficient to rebut the presumption that a party who signs a contract has read its contents.

Additionally, the Court finds that that Ms. Heard had knowledge of the omissions through her attorney, Mr. Fuqua. An attorney-client relationship is an agency relationship. *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the

consequences of the acts or omissions of this freely selected agent."); *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986) ("The attorney-client relationship is an agency relationship."); *Nathan v. Watson Co. v. Employers Mut. Cas. Co.*, 218 S.W.3d 797, 802 (Tex.App.—Fort Worth, 2007). The agent's knowledge is imputed to the principal. *Fletcher v. Minton*, 217 S.W.3d 755, 759 (Tex. App.—Dallas, 2007, no pet.); *Nathan*, 218 S.W.3d at 802; *McMahan v. Greenwood*, 108 S.W.3d 467, 480–81 (Tex. App.—Houston [14th Dist.], 2003, pet. denied) ("Knowledge acquired by an attorney during the existence of an attorney-client relationship and while acting in the scope of his or her authority, is imputed to the client.").

The Court finds that Mr. Fuqua, the attorney that filed Ms. Heard's bankruptcy schedules, had knowledge of the existence of and transfers to and from the trusts. Mr. Fuqua testified that he had represented the Heards in legal matters and knew the Heards for over 10 years prior to Ms. Heard's bankruptcy case. Mr. Fuqua admitted to having knowledge of a Flippin Family Trust that preceded the Flippin Family Trust created in 2006. Mr. Fuqua admitted to meeting with Mr. Heard and Mr. Stevens multiple times during the period between the June 2006 SSHI settlement agreement and Ms. Heard's bankruptcy filing in February of 2007. Mr. Fuqua testified that the SSHI settlement agreement was discussed during these meetings. Mr. Fuqua admitted that he had had read the SSHI settlement agreement. The SSHI settlement agreement was signed by Ms. Heard, on behalf of a Flippin Family Trust. The SSHI settlement agreement also stated that 350,000 shares of SSHI would be transferred to Mr. Stevens. Within a month of the SSHI settlement agreement, the SSHI shares were transferred to the second Flippin Family Trust.

Mr. Fuqua testified that the meetings occurred long after the occurrence of the transaction embodied by the SSHI settlement agreement. Approximately eight months separate the SSHI

settlement and Ms. Heard's February bankruptcy filing. Based on Mr. Fuqua's testimony, the Court can only conclude that the meetings occurred near the date of Ms. Heard's bankruptcy filing.

Based on Mr. Fuqua's testimony, the Court finds that Mr. Fuqua had knowledge of Ms. Heard's interest in and transfers to and from the Flippin Family Trust created in 2006. Mr. Fuqua met with Mr. Heard and Mr. Stevens multiple times in the months prior to Ms. Heard's bankruptcy filing. The SSHI settlement agreement was discussed. Mr. Fuqua saw a copy of the settlement agreement. The settlement agreement referenced a Flippin Family Trust and was signed by Ms. Heard. The settlement agreement also stated that 350,000 shares of SSHI would be transferred to Mr. Stevens.

### 4. Fraudulent Intent

An objecting party can establish the intent requirement of a § 727(a)(4)(A) by showing that the debtor made the false statement "with either the intent to defraud or with reckless indifference to the truth." *In re Rajabali*, 365 B.R. at 714 (citing *In re Sholdra*, 249 F.3d at 382); *Grogan*, 498 U.S. at 287. Reckless indifference can be established by "circumstantial evidence." *In re Sholdra*, 249 F.3d at 382 (citing *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989)).

Based on the evidence presented, the Court finds that Ms. Heard made false statements with, at the very least, reckless indifference to the truth. Ms. Heard testified that she never inquired about the nature of the settlement and trust agreements she signed. Ms. Heard testified that she undertook absolutely no efforts to investigate her financial affairs or the veracity of the statements made in her schedules or during a creditors' meeting. Even if the Court accepted Ms. Heard's contention that she had no knowledge of the contents of the documents she signed, Ms.

Heard nevertheless knew that she had signed documents relating to financial matters. Even if the Court accepted Ms. Heard's contention that she had no knowledge of all things financially related, Ms. Heard nevertheless knew that she had no such knowledge. The Court cannot think of a better example of reckless indifference to the truth than a debtor signing bankruptcy schedules without undertaking an investigation of her financial affairs when she knows that she signed important financial documents and that she has no knowledge of the financial documents or anything related to her financial history.

If, as the Court finds, Ms. Heard did have personal knowledge of the non-disclosed assets and transactions, Ms. Heard's failure to disclose, active avoidance of investigating her finances, and false testimony with respect to the assets and transactions, establishes fraudulent intent.

On May 28, 2008 Ms. Heard filed an amended statement of financial affairs and schedule I that disclosed the Flippin Family Trust and Mr. Heard's income. Though the act of filing amended schedules may be a fact to consider, amendments, alone, do not preclude a finding of reckless disregard. *In re Sholdra*, 249 F.3d at 382. Moreover, the weight given to an amendment is significantly reduced when the amendment is made after the filing of an adversary proceeding alleging a § 727(a)(4)(A) claim. *Id.* Ms. Heard's amendments were made only after Washington Mutual filed their complaint.

### 5. Material

"'The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *In re Beaubouef*, 966 F.2d at 178 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 617 (11th Cir. 1984)).

11

The Flippin Family Trust assets are a material matter. If the Trust assets were retained in the estate, they would constitute a material portion of the estate's assets. Moreover, Mr. Heard acquired the security company stock during the Heard's marriage. Property acquired during the course of a marriage is presumptively community property. TEX. FAM. CODE. ANN. § 3.003(a) (Vernon 2006); *In re Trammell*, ---B.R.---, 2007 WL 335580 (Bankr. N.D. Tex. Nov. 9, 2007). The community presumption may be overcome only by clear and convincing evidence. TEX. FAM. CODE. ANN. § 3.003(b); *In re Trammel*, 2007 WL at *3. Ms. Heard has not offered evidence sufficient to overcome the presumption. There was evidence that the stock may have been Mr. Heard's sole management community property. However, § 541(a)(2)(B) provides that any community property interest that is subject to a claim against the debt is property of the estate.[4] Washington Mutual holds a claim against Ms. Heard based on her personal guarantee of the 2001 business loan. The note was secured by the stock at issue. Accordingly, the stock would have been property of Ms. Heard's bankruptcy estate under § 541(a)(2)(B).

Because the Court finds that Ms. Heard's debts are non-dischargeable under § 727(a)(4)(A), the Court does not consider whether Ms. Heard's debts are also non-dischargeable under §§ 727(a)(2)(A), (a)(2)(B), and (a)(3).

---

[4] Section 541(a)(2)(B) provides that the bankruptcy estate includes: "All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."

12

## Conclusion

For the reasons set forth above, the Court holds that Ms. Heard's debts are non-dischargeable under 11 U.S.C. § 727(a)(4)(A). A separate Judgment will be issued.

Signed at Houston, Texas, on November 25, 2008.

MARVIN ISGUR
United States Bankruptcy Judge